IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ALABAMA

EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CR |
| | ) |
| UNION FOUNDRY COMPANY, | ) |
| a division of McWANE, Inc. | ) |

PLEA AGREEMENT AND CONDITIONS

The United States of America represented by the United States Attorney's's Office for the Northern District of Alabama and the Department of Justice Environmental Crimes Section, the defendant Union Foundry Company, a division of McWane, Inc. (herein "Union Foundry") and the defendant's attorney, each hereby acknowledges the following to be the plea agreement between the United States and the defendant and the conditions and understandings that apply to the agreement:

I. PLEA AGREEMENT: The United States and the defendant hereby

AGREE to the following:

    (a)    Plea: The defendant will plead guilty to Counts One and Two of the Information.

    (b)    Factual Basis:

Count One

1. Union Foundry is located in Anniston, Alabama. Union Foundry is an iron foundry, which manufactures ductile iron pipe fittings.

2. Effective December 1, 1995, the ownership of Union Foundry was transferred from McWane, Inc. to Ransom Industries, Inc., later reorganized into Ransom Industries LP on December 18, 1998 ("Ransom"). Ransom, an Alabama corporation formed in 1995, was a subsidiary of McWane, Inc. and McWane, Inc. operated and managed Ransom. On July 28, 2004, Ransom was merged into McWane, Inc.

3. Defendant Union Foundry was an "employer" under the Occupational Safety and Health Act ("OSH" Act), 29 U.S.C. 651 et. seq., and was required to follow regulations promulgated by the Occupational Safety and Health Administration which are implemented to protect the safety of employees at facilities such as Union Foundry.

4. The manufacturing process utilized by defendant Union Foundry required employees to use equipment and machinery that could subject them to the risks of serious injury or death if not properly operated in accordance with safety and health regulations.

5. One of the machines in the Union Foundry facility was the "George Fisher Disa," also known as the GFD, where iron fittings were formed in molds. Part of the process at the GFD included placing "cores," which were made out of sand, into the fitting molds to form the interior space of the iron fittings. Used or broken cores were known as "core butts." Core butts were sent out of the GFD on a conveyor belt, "core butt conveyor." Excess sand from the core butts would often clog the conveyor belt, and it was necessary for workers to manually remove the sand from the core butt conveyor.

6. The core butt conveyor at the GFD was installed on or about March 17, 2000. The core butt conveyor was installed without a required safety guard at the tail pulley area of the conveyor, which was necessary to protect employees from getting caught in the conveyor while it was running.

7. From on or about March 17, 2000 until on or about August 22, 2000, Union Foundry allowed employees at its Union Foundry facility to work in and around the unguarded tail pulley of the core butt conveyor.

8. On or about August 22, 2000, in the Northern District of Alabama, defendant Union Foundry allowed Reginald Elston, a maintenance employee, to work in the area of the tail pulley of the core butt conveyor while it was operating without a safety guard. Mr. Elston was caught in the unguarded tail pulley of the core butt conveyor and was crushed to death.

9. By its conduct, defendant Union Foundry did willfully violate 29 C.F.R. § 1910.212(a), a regulation prescribed pursuant to the OSH Act, and that violation caused death to an employee, in violation of 29 U.S.C. § 666(e).

### Count Two

10. The manufacturing process utilized by defendant Union Foundry involved melting ferrous scrap metal in a water cooled cupola furnace. The melting process in the cupola generated substantial amounts of air emissions containing particulate matter, carbon monoxide, and lead.

11. The emissions were required to be sent through "baghouses," labeled "east and "west," which were used to capture the particulate matter as dust before any gas was emitted from the cupola to the ambient air. The dust captured in the baghouses is a "hazardous waste" under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. 6901, et. seq., because it could exhibit the characteristic of toxicity for lead and cadmium.

12. Union Foundry used a "solidification" system for treating the baghouse dust. In the solidification system, baghouse dust was shaken onto an enclosed conveyor belt system which delivered the dust to a receptacle while cement was added to the receptacle from the other side and mixed with the dust. Operating the receptacle in this manner while it was open was not authorized.

13. At no point in time did defendant Union Foundry have a permit to treat the baghouse dust, a hazardous waste. Under 40 C.F.R. §264.1(g)(5), a facility may treat hazardous waste without being subject to RCRA only if it is a "totally enclosed treatment facility."

14. The exemption for totally enclosed treatment is only available to a facility if the treatment system is "directly connected to an industrial production process and ... is constructed and operated in a manner that prevents the release of any hazardous waste or any constituent thereof into the environment during treatment." 40 C.F.R. § 260.10. The east baghouse at Union Foundry facility was not operated at all times as a "totally enclosed treatment facility."

15. From in or about December 1997 until on or about May 11, 2000, in the Northern District of Alabama, defendant Union Foundry did knowingly treat and cause others to treat identified hazardous waste, namely baghouse dust that exhibited the characteristic of toxicity for lead and cadmium pursuant to 40 C.F.R § 261.24, without a permit issued by the United States Environmental Protection Agency or the State of Alabama to treat such waste.

(c) <u>Joint Recommendation Regarding Sentence</u>: The United States and Defendant Union Foundry agree pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal procedure that, upon entry of the guilty pleas by the defendant, the appropriate disposition of this case shall be as follows:

1. Defendant shall pay a fine of three million five hundred thousand dollars ($3,500,000).

3

2. Defendant shall be placed on probation for three years.

3. In addition to the fine specifically stated in paragraph1 and the standard terms and conditions of probation imposed by the Court, defendant further agrees to perform community service pursuant to §8B1.3 of the Federal Sentencing Guidelines and 18 U.S.C. § 3553(a). To fulfill this obligation, defendant shall within thirty (30) days of entering its guilty pleas, present a written proposal to the United States Attorney's Office for the Northern District of Alabama for performing community service valued at seven hundred fifty thousand dollars ($750,000) in accordance with §8B1.3 of the Federal Sentencing Guidelines and 18 U.S.C. § 3553(a). The defendant understands that the proposed community service is subject to approval by the U.S. Attorney's Office. The defendant understands that if the U.S. Attorney's Office does not approve the proposed community service, the defendant will be required instead to pay immediately $750,000 as an additional criminal fine. The defendant also understands that it is not entitled to claim any benefit under the United States Tax Code and its regulations for payment of any criminal fine or monies spent for community service

4. In the event the Court rejects the plea agreement, the Defendant will be entitled to the remedies available under Fed. R. Crim. Proc. 11(c)(5).

(d) <u>Special Assessment Fee</u>: On the date it enters the guilty pleas, the defendant will produce a money order or cashier's check in an amount equal to $400.00 for each count, for a total of $800.00, payable to the "Clerk, United States District Court" by virtue of the special assessment requirement of Title 18, United States Code, Section 3013. Immediately upon entry of the plea, the defendant will pay the assessment to the Clerk of the Court.

II. <u>CONDITIONS AND UNDERSTANDINGS:</u>  The following conditions and understandings apply to the above stated plea agreement:

POSSIBLE SENTENCES AND THE GUIDELINES

(1) <u>Maximum Possible Sentences</u>:  The defendant is aware of the maximum possible sentence under the Information.  The maximum possible fine for Count One is $500,000 or twice the gross gain or loss suffered as a result of the offense.  29 U.S.C. § 666(e); 18 U.S.C. § 3571.  The maximum possible fine for Count Two is the greater of $50,000 per day of violation or twice the gross gain or loss suffered as a result of the offense.  42 U.S.C. § 6928(d)(2)(A); 18 U.S.C. § 3571.  The defendant is aware that a sentence could include fines, assessments, and probation.

(2) <u>Guidelines</u>:  Congress has created Sentencing Guidelines which set a sentencing range in this case.  These Guidelines take into consideration, among other things, the nature and consequences of the offense, the defendant's role in the offense, other conduct of the defendant relevant to the offense, whether the defendant has accepted responsibility, whether the defendant has obstructed justice, and the defendant's criminal record.  The defendant understands that Chapter 8 of the Sentencing Guidelines set forth the parameters for criminal fines for corporations committing offenses under United States Code Title 18.  The defendant also understands that Chapter 8 does not apply to criminal fines for corporations committing offenses under United States Code Title 42.

Counsel has explained to the defendant that, in light of the United States Supreme Court's recent decision in <u>United States v. Booker</u>, the federal sentencing guidelines are **advisory** in nature.  Sentencing is in the court's discretion and is no longer required to be within the guideline range.  The defendant agrees that, pursuant to this agreement, the court may use facts it finds by a

preponderance of the evidence to reach an advisory guideline range and defendant explicitly waives any right to have those facts found by a jury beyond a reasonable doubt.

The Court may even decide that the recommended sentence is not within the Guidelines range and may not follow the recommendation for that reason. Also, the Court may, for just cause, impose a sentence above or below the guidelines range, even the maximum possible sentence under the law.

(3) <u>Non-binding</u>: It is the Court's duty to impose sentence. The Court is not a party to the above plea agreement. Any sentence recommendation by the United States does not bind the Court, and the Court may impose a more severe or less severe sentence than that recommended. However, in the event the Court rejects the plea agreement, the Defendant will be entitled to the remedies available under Fed. R. Crim. Proc. 11(c)(5).

(4) <u>Sentencing Information</u>: The United States may make any facts or evidence it deems relevant to sentencing known to the Court. The United States reserves full rights of allocution.

<u>WITHDRAWAL OF GUILTY PLEA</u>

Except as otherwise provided in this plea agreement, the defendant may not withdraw the plea of guilty once it has been entered.

<u>FAMILIARITY WITH CHARGES</u>

The defendant is aware of the charges, and the charges and possible defenses have been discussed with counsel. The defendant is fully aware of the elements charged in Count One of the Information. The defendant has been informed of the necessary proof required of the government for each element of 29 U.S.C. § 666(e) as stated in of the Information. The

6

defendant is fully aware of the elements charged in Count Two of the Information. The defendant has been informed of the necessary proof required of the government for each element of 42 U.S.C. § 6928(2)(A) as stated in of the Information.

## ACKNOWLEDGMENT OF GUILT AND AUTHORIZATION TO ENTER GUILTY PLEAS

The defendant is pleading guilty to the charges described above because the defendant is in fact guilty. The defendant will provide to the United States written evidence in the form of a notarized resolution of the Board of Directors of McWane, Inc., owner of defendant Union Foundry, with both notary and corporate seals, certifying that defendant is authorized to plead guilty to the charges as set forth in the Information, and to enter into and comply with all provisions of this Plea Agreement. The resolution shall further certify that the Chairman of the Board of McWane, Inc., on behalf of defendant Union Foundry, and its designees are authorized to take these actions and that all corporate formalities, including, but not limited to, approval by defendant's directors, required for such authorization have been observed.

## WAIVERS

By pleading guilty the defendant waives and agrees to waive any and all motions, defenses, objections, or requests which have been made or which could have been made in this case. The defendant also waives the right to trial by a jury (or by a judge if the defendant elected to be tried by a judge alone). At any such trial the defendant would have the right to assistance of counsel, to confront and cross-examine the witnesses against the defendant, to present evidence on the defendant's behalf, to compel the attendance of witnesses for the defense, and to testify or refuse to testify. The United States would have the burden of proving the case against the

defendant beyond a reasonable doubt. The defendant would be presumed innocent and could only be convicted if a jury of twelve people (or a judge if the defendant elects to be tried by a judge) unanimously found the defendant to be guilty beyond a reasonable doubt. The defendant would have the right to appeal a guilty verdict. All these rights and protections are hereby waived. The defendant further waives its right to appeal the conviction(s) and sentence as set out subsequently in this agreement.

### **WAIVER OF RIGHT TO APPEAL**

In consideration of the potential disposition of this case as set forth above, the defendant waives its right to appeal to appeal its conviction in this case, any sentence the court might impose upon me, and the right to challenge any sentence so imposed or the manner in which the sentence was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255.

### FOREBEARANCE

The United States agrees that if the Court accepts the guilty plea of the Defendant, that the United States will not prosecute the Defendant for any crimes occurring in the Northern District of Alabama relating to environmental violations at the Union Foundry facility or occupational safety and health violations at the Union Foundry facility which were committed and known to the United States prior to the date of this agreement.

## COUNSEL

The defendant has discussed this case at length with defendant's counsel. The defendant is satisfied with counsel's investigation of the case, exploration of possible defenses, advice and other representation.

## NON-RELIANCE

Other than what is contained in this document, NO PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO THE DEFENDANT BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED, TO INDUCE THE DEFENDANT TO PLEAD GUILTY. The defendant is not relying on any representations from anyone regarding possible parole or release dates. This document represents the sole agreement and understanding between the defendant and the United States.

## POST SENTENCE ACTIONS

This document in no way limits any response by the United States to post-sentencing actions, including appeals, motions to correct or review sentences, or habeas corpus petitions. It is expressly understood and agreed that nothing in the plea agreement shall limit the right of any agency or office of the United States, including but not limited to the United States Environmental Protection Agency, to seek and take civil or administrative action, including any such action relating to suspension or debarment or listing.

This document **DOES NOT BIND any other United States Attorney** in any other district, or any state or local authorities.

## TAX PROCEEDINGS

Unless otherwise specified herein, this document in no way applies to or limits any pending or prospective proceedings, related to the defendant's **tax liabilities**, if any.

## COMPETENCE

The defendant's representative has not had any drugs, medication or alcohol within the past 48 hours except as stated hereafter, and is competent to enter the plea agreement stated above on behalf of the defendant.

## ACKNOWLEDGMENTS

1. I have READ this document, DISCUSSED it with my attorney, and UNDERSTAND and AGREE with all its provisions both individually and totally.

   Date 7/28/05

   _____
   DAVID GREEN, in his
   corporate capacity as Executive Vice
   President of MCWANE, INC.

2. I have discussed this case with the defendant in detail and have advised the defendant of the defendant's rights and all possible defenses. The defendant has conveyed to me that the defendant understands this document and consents to all its terms. I believe the plea and disposition set forth herein are appropriate under the facts of this case. I concur in the entry of the plea as indicated above and on the terms and conditions set forth herein.

   _____        _____
   Date                    W. WARREN HAMEL

3. I have reviewed this document and agree to its provisions.

## OTHER DISTRICTS AND JURISDICTIONS

This document **DOES NOT BIND** any other **United States Attorney** in any other district, or any state or local authorities.

## TAX PROCEEDINGS

Unless otherwise specified herein, this document in no way applies to or limits any pending or prospective proceedings, related to the defendant's **tax liabilities**, if any.

## COMPETENCE

The defendant's representative has not had any drugs, medication or alcohol within the past 48 hours except as stated hereafter, and is competent to enter the plea agreement stated above on behalf of the defendant.

## ACKNOWLEDGMENTS

1. I have READ this document, DISCUSSED it with my attorney, and UNDERSTAND and AGREE with all its provisions both individually and totally.

    Date

    _____
    DAVID GREEN, in his corporate capacity
    as Executive Vice President of MCWANE,
    INC.

2. I have discussed this case with the defendant in detail and have advised the defendant of the defendant's rights and all possible defenses. The defendant has conveyed to me that the defendant understands this document and consents to all its terms. I believe the plea and disposition set forth herein are appropriate under the facts of this case. I concur in the entry of the plea as indicated above and on the terms and conditions set forth herein.

    _July 26, 2005_
    Date

    _____
    W. WARREN HAMEL

10

3.  I have reviewed this document and agree to its provisions.

                                                ALICE H. MARTIN
                                                UNITED STATES ATTORNEY

7/28/05
Date

JAMES A. SULLIVAN
ASSISTANT UNITED STATES ATTORNEY

DANIEL W. DOOHER
Senior Trial Attorney
Environmental Crimes Section
United States Department of Justice

CHRISTOPHER J. COSTANTINI
Senior Trial Attorney
Environmental Crimes Section
United States Department of Justice

11